UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PENSION BENEFIT GUARANTY CORP.,

                Plaintiff,

                                    Case No. 03-75092

v.

                                    HON. GEORGE CARAM STEEH

ROUGE STEEL COMPANY, et al.,

                Defendant,

_____/

OPINION AND ORDER DENYING PLAINTIFF AND DEFENDANT-INTERVENORS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT, VACATING THE DECISION OF
PLAINTIFF PBGC, AND REMANDING FOR FURTHER DEVELOPMENT OF THE
ADMINISTRATIVE RECORD

I. INTRODUCTION

      Before the court are cross-motions for summary judgment filed by plaintiff

Pension Benefit Guaranty Corporation ("PBGC") and defendant-intervenors United Auto

Workers ("UAW"). This cause of action arises out of Title IV of the Employee Retirement

Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301-1461 (2000). For the reasons stated

below, the cross-motions are denied as set forth below, and the PBGC's decision is

VACATED and REMANDED back to that agency in order to further develop the

administrative record.

II. STATEMENT OF FACTS

      Plaintiff PBGC is a government corporation which was statutorily created by

ERISA. Essentially, PBGC was created to protect pensioners whose plans were at risk

of failing due to mismanagement or any other cause. PBGC acts as an insurer of

pension plans nationwide. Because PBGC insures the pension plans of millions of citizens, it faces great risk of financial loss when large employers file for bankruptcy and become unable to pay the pension benefits accrued by their employees. To avoid such situations, PBGC is authorized to initiate what is known as involuntary terminations of pension plans pursuant to 29 U.S.C.A. § 1342. Involuntary terminations are statutorily permitted when an employer becomes "unable to pay benefits when due", or when "the possible long-run loss of the corporation with respect to the plan may reasonably be expected to increase unreasonably if the plan is not terminated."[1] 29 U.S.C.A. § 1342(a). When PBGC decides that involuntary termination is appropriate, it is statutorily required by 29 U.S.C.A. § 1342(c) to apply to the appropriate United States District Court for adjudication. The instant action filed by PBGC represents such an application to terminate various pension plans administered by defendant Rouge Steel Company ("Rouge").

Defendant Rouge was incorporated under Delaware law in 1981 and its principal place of business is located in Dearborn, Michigan. (Complaint at ¶ 5.) There are four different pension plans which, in combination, serve over 5,000 Rouge employees (These are the Hourly Plan, the Salaried Plan, the Hourly Past Service Plan and the Salaried Past Service Plan, collectively referred to herein as the "Plans"). (Id. at ¶ 11.) On October 23, 2003, Rouge filed a petition under Chapter 11 of the United States Bankruptcy Code in the state of Delaware. (Id. at ¶ 8.) Subsequently, on December 17,

---

[1]While there are other situations in which involuntary terminations may be permissible, the two situations described above are the only relevant situations for the purposes of the motions before this court.

2003, PBGC began involuntary termination proceedings against the Plans, based on its assessment that Rouge would likely be unable to make payments to pensioners as their benefits came due, and concluded that failure to terminate the plans would cause PBGC's liability to increase unreasonably. (Id. at ¶ 18.)  Rouge was notified of PBGC's decision on December 17, 2003, and PBGC filed its complaint before this court on December 18, 2003. In its complaint, PBGC seeks to have the Plans terminated and also seeks to be named trustee of the plans. On December 19, 2003, Rouge was permitted by the United States Bankruptcy Court in Delaware to auction off its assets to the highest bidder. Within days, on December 22, 2003, Rouge sold its assets to a Russian corporation named SeverStal for $280 million. The asset sale did not include SeverStal assuming the responsibilities of administering the pension plans, however SeverStal decided to extend employment offers to all of the individuals who had been Rouge employees. As a result, no Rouge employees lost their jobs due to the Rouge bankruptcy. Furthermore, none of the Rouge employees elected to exercise an early retirement option that was available under the pension plans[2].

For nearly two years, Rouge has continued to pay the benefits of the individuals covered by the pension plans as they have come due. Rouge and Defendant-Intervenors UAW claim to be working together to design a termination procedure for the Plans and oppose the determinations made by PBCG in December of 2003.

---

[2]This fact is pertinent to this matter because PBGC feared that should the Rouge employees opt for early retirement, the liability of PBGC in regards to the pension plans would unreasonably increase.

3

III. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences therefrom must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

4

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## IV. STANDARD OF REVIEW FOR INVOLUNTARY TERMINATION PROCEEDINGS

One major point of dispute between the parties in this cause of action is the standard of review which this court should apply to the PBGC's decision to invoke involuntary termination proceedings.

PBGC argues that under the APA, the court is required to show deference to final agency actions and may only overrule those actions in the rare instance in which the agency's decision was arbitrary or capricious. 5 U.S.C.A. § 706(2)(b) states that a reviewing court may hold an agency action unlawful when that action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." In support of their position that the arbitrary and capricious standard enunciated in 5 U.S.C.A. § 706 of the APA applies to PBGC actions pursuant to 29 U.S.C.A. § 1342, plaintiff relies upon the reasoning in a decision out of the Southern District of New York. The court in that case stated "[t]he Pension Committee and the intervenors would have to show that the PBGC decision to terminate the plans was arbitrary and capricious, i.e.,

5

that no reasonable person could have reached the decision to terminate the plans on the evidence contained in the administrative record." In re Pan American World Airways, Inc. Co-Op Retirement Income Plan, 777 F. Supp 1179, 1182 (S.D.N.Y., 1991). Since the decision in the Pan American case, many other district courts have cited the reasoning therein and have likewise concluded that a district court should apply an arbitrary and capricious standard to any review of of PBGC determinations in an involuntary termination proceeding.

In response to PBGC's position on the standard of review to be used by the court, defendant-intervenors contend that it is proper for the court to conduct a de novo review of the agency's decisions. In support of this position, the UAW relies on the statutory construction of 29 U.S.C.A. § 1342 and argues that the statutory requirement for a district court adjudication indicates that Congress did not intend for PBGC's decisions to carry the force of law and likewise did not intend for the court to show deference to the agency's findings. Furthermore, the UAW recently supplemented their original brief with a September 21, 2005 decision of the United States Bankruptcy Court for the Northern District of Illinois in which the Bankruptcy Judge held that it is proper for the court to conduct a de novo review of 29 U.S.C.A § 1342 proceedings. Pension Benefit Guaranty Corp. v. United Air Lines, as Plan Administrator for the United Airlines Pilot Defined Benefit Pension Plan, (Adversary No. 05 A 00481).[3]

---

[3] Counsel for the UAW recently provided the court with further decisions in that matter, neither of which impacts this decision.

<u>IV. ORDER TO REMAND</u>

In the present instance, the court finds it unnecessary to determine whether or not  § 706 of the APA applies to a PBGC action pursuant to 29 U.S.C.A § 1342 because the administrative record created by the PBGC lacks sufficient information to enable the court to rule on these cross motions for summary judgment. As stated by the Supreme Court, "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court". <u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973). However, in some instances, the administrative record may be deemed insufficient. The Supreme Court explains "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Florida Power & Light Co. v. Lorion</u>, 470 U.S. 729 (1985). In this particular cause of action, the administrative record does not indicate that all relevant factors have been considered.

In the <u>Pan American</u> case previously discussed, the court discussed in detail the substance of the administrative record. The court stated:

> In fact, the administrative record contains substantial evidence justifying the termination decision, including not only the record of PBGC's own internal consideration of the financial condition of the two plans ... the reports by the company that it could not make required periodic contributions...and acknowledgment by counsel on the record during proceedings in Bankruptcy Court that the company could not pay overdue contributions...but also reports from actuaries...and investment bankers...confirming that plan liabilites were unfunded and that the company could not make the payments necessary to fund those liabilities fully. Thus, it is evident from the record that the decision to terminate the plans was not arbitrary and capricious.

7

In re Pan American World Airways, Inc. Co-op Retirement Income Plan, 777 F. Supp at 1182. This quotation clearly indicates that the District Court for the Southern District of New York found the admissions of the defendant company and the defendant company's own financial reports which indicated it could not make payments when they became due to be relevant factors to consider. In the present case, no evidence of a similar nature has been provided to the court through the administrative record[4]. The administrative record developed by the PBGC is mostly composed of its own financial analysis of Rouge's assets, and its own subsequent predictions regarding the viability of the pension plans. The court is aware of the time sensitive nature of a PBGC decision to seek involuntary termination of a pension plan. However, the urgent nature of the PBGC decision does not entirely supplant the need for a fully developed record. There is nothing in the administrative record demonstrating Rouge and the UAW's intentions or abilities with regards to their responsibilities as plan administrators at the time that Chapter 11 was filed. Likewise, it is unclear to what extent PBGC considered the pending asset purchase agreement with SeverStal in reaching their decision. While numerous photocopies of articles written about the potential sale are included in the administrative record, there is little indication of the role this information played in the agency's decision-making process. The presence of such evidence in the administrative record would assist this court in ascertaining whether or not involuntary termination was proper, as it would demonstrate whether there were factors in existence that should

---

[4]The court is in no way indicating that an involuntary termination is only proper in cases in which the plan administrator specifically indicates during bankruptcy proceedings that it is not able to make payments under the plan as they come due.

8

have diminished PBGC's fears in December of 2003. Furthermore, without a fully developed administrative record, the court cannot fully ascertain whether or not it was reasonable for PBGC to anticipate that its liability would be unreasonably increased, as stated in 29 U.S.C.A. § 1342 and as argued by PBGC in support of their motion.

<u>V. CONCLUSION</u>

Because the administrative record does not reflect any consideration of many important, relevant factors required by this court to review the propriety of PBGC's decision, the PBGC's motion for summary judgment is hereby DENIED, its decision is VACATED and the matter is REMANDED to the PBGC for further development of the record.  For these same reasons, the court is unable to determine that PBGC acted beyond its authority in seeking involuntary termination of the pension plans, and the UAW's motion for summary judgment is likewise DENIED.

IT IS SO ORDERED.


S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  January 10, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on January 10, 2006, by electronic and/or ordinary mail.


S/Josephine Chaffee
Secretary/Deputy Clerk

9