UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PENSION BENEFIT GUARANTY CORP.,

    Plaintiff,

v.

                                      Case No. 03-CV-75092

                                      HON. GEORGE CARAM STEEH

ROUGE STEEL COMPANY, et al.,

    Defendants.
_____/

OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT-INTERVENORS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND APPOINTING PBGC AS TRUSTEE OF THE PLANS

Before the Court are cross-motions for summary judgment filed by Plaintiff Pension Benefit Guaranty Corporation ("PBGC") and Defendant-Intervenors United Auto Workers ("UAW"). This cause of action is founded upon Title IV of the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301-1461. Oral argument on these motions occurred on July 29, 2010. For the reasons that follow, the Court GRANTS Plaintiff's Motion for Summary Judgment (Dkt. #49), DENIES Intervenors' Motion for Partial Summary Judgment (Dkt. #64), and APPOINTS PBGC as Trustee of the Plans.[1]

BACKGROUND

This case concerns four pension plans (collectively, the "Plans"): the Rouge Steel Company - UAW Retirement Plan ("Hourly Plan"), the Rouge Steel Company - UAW Past Service Retirement Plan ("Hourly Past Service Plan" and together with the Hourly Plan, the

---

[1] In granting Plaintiff's Motion for Summary Judgment, the Court provides the relief requested in the Liquidating Trustee's Petition for Appointment of the Pension Benefit Guaranty Corporation as Trustee of the Rouge Steel Company Retirement Plans (Dkt. #45). The Petition is therefore moot.

"Hourly Plans"), the Rouge Steel Company Salaried Employee Retirement Plan ("Salaried Plan"), and the Rouge Steel Company Salaried Employee Past Service Retirement Plan ("Salaried Past Service Plan" and together with the Salaried Plan, the "Salaried Plans"). The Plans are defined benefit pension plans covered by Title IV of ERISA. The UAW is the collective bargaining representative of certain participants in the Plans. Defendant Rouge Steel, Inc. ("Rouge Steel") was the sponsor, named fiduciary, and plan administrator of the Plans. PBGC is a government corporation statutorily created by ERISA to act as an insurer of pension plans nationwide. PBGC also has the authority to initiate involuntary terminations of pension plans by applying to the court for adjudication.

On October 23, 2003, Rouge Steel, its parent Rouge Industries, Inc. ("Rouge"), and Rouge's other subsidiaries filed for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code. On December 17, 2003, PBGC decided the Plans should be terminated, PBGC should become trustee of the Plans, and December 18, 2003 should be established as the Plans' termination date. On December 18, 2003, PBGC published notice of its determinations in three newspapers and notified Rouge Steel and UAW. On that same day, PBGC filed this action. PBGC sought an order from the Court terminating the Pension Plans, appointing PBGC trustee of the Pension Plans, and establishing December 18, 2003 as the Plans' termination date. At the end of December 2003, the Bankruptcy Court approved the sale of Rouge's assets to SeverStal. The sale became effective at the end of January 2004. In connection with the sale, substantially all of the employees were hired by SeverStal. However, Severstal did not assume the Plans.

On March 2, 2004, Rouge Steel and UAW entered into an Agreement and Stipulation, approved by the Bankruptcy Court, prohibiting the Liquidating Trustee from

2

entering into any agreement with PBGC regarding termination of the Hourly Plans without UAW's consent. There is no similar agreement regarding the Salaried Plans.

The Plans have continued to make payments to beneficiaries and participants have continued receiving pension service credit, as required by the terms of the Plans. Rouge Steel continued as sponsor and Plan Administrator until the Plan of Liquidation became effective. Since the bankruptcy filing, in October 2003, Rouge Steel has not made contributions to the Plans.

UAW intervened early in this case and opposed the involuntary termination of the Plans under the terms sought by PBGC. PBGC moved for summary judgment, seeking an order terminating the Plans. UAW filed a cross-motion for summary judgment on the issue of whether PBGC's termination determination was based on an adequate administrative record and challenged the termination date sought by PBGC. During the hearing, UAW acknowledged that the Plans will terminate: "...you asked if this plan is going to be terminated, and at some point it will." (October 11, 2005 Trans., p. 23.) On January 10, 2006, the Court issued an Opinion and Order vacating PBGC's decision and remanding for further development of the administrative record. Following the Court's decision, UAW sought to participate in the administrative process before the PBGC but was refused.

On November 2, 2007, Ford Motor Company formally agreed in a letter agreement to study the feasibility of Ford's assumption of the Plans. An agreement for Ford to assume the Plans has not resulted. UAW Local 600 informed its Rouge Steel members about the existence of the letter agreement soon after it was negotiated, and has also informed them of the ongoing status of UAW's discussions with Ford on the question of assumption by Ford of the Plans. Ford's representatives informed UAW's representatives that PBGC had

been in communication with Ford management about discussions between UAW and Ford concerning possible Ford assumption of the Plans.

Rouge Steel's Plan of Liquidation was confirmed, and it became effective on June 30, 2009. As of that date, Rouge Steel was deemed to have liquidated. Rouge Steel no longer does business; instead, it has turned into a Delaware liquidating trust whose purpose is to close pending issues and then dissolve. The Liquidating Trustee is winding down the estate.

On November 2, 2009, PBGC filed its Motion for Summary Judgment which explained its October 27, 2009 decision to pursue a termination date of October 31, 2005 rather than December 18, 2003.

Pursuant to Rouge Steel's Plan of Liquidation, responsibility for administration of the Plans passed to the Liquidating Trustee, Steven Victor. The Plan of Liquidation provides that the Liquidating Trustee will continue as Plan Administrator until termination of the Plans or appointment of a trustee of the Plans. UAW objected to this portion of the Plan of Liquidation, but the Bankruptcy Court overruled UAW's objection and confirmed the Plan of Liquidation. UAW appealed the confirmation order and sought a stay pending appeal. The request for a stay was denied by the Bankruptcy Court and UAW has not sought a stay from the district court in Delaware, where the appeal is pending. On January 15, 2010, pursuant to ERISA Section 4048(a)(3), PBGC and the Liquidating Trustee, acting as Plan Administrator for the Salaried Plans, entered into a Stipulation setting October 31, 2005 as the termination date for the Salaried Plans. The Stipulation was entered by the Court on January 21, 2010. UAW continues to dispute the status of the Liquidating Trustee as the Plan Administrator and argues that November 2, 2009 is the proper termination date for the

Plans.

The question now before the Court is the proper termination date for the Plans. Since the Court's 2006 Order, PBGC changed its requested termination date from December 18, 2003 to **October 31, 2005**. UAW argues that if the Court accepts PBGC's proposed date of October 31, 2005, certain early retirees and individuals who have received disability benefits will have to repay benefits received. Instead, UAW asks the Court to set **November 2, 2009** as the termination date of the Plans, which is the date PBGC made public its decision to pursue an October 31, 2005 termination date. There is no disagreement between the parties that the Plans should be terminated or that PBGC should be named trustee of the Plans.

STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment forthwith if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors*

*Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *Id.*

ANALYSIS

1) The Stipulation Establishing October 31, 2005 As The Termination Date For The Salaried Plans Is Effective.

PBGC and the Liquidating Trustee, acting as Plan Administrator for the Salaried Plans, entered into a Stipulation setting October 31, 2005 as the termination date for the Salaried Plans. The Stipulation was entered by the Court on January 21, 2010. While there is a separate stipulation in place prohibiting the Liquidating Trustee from entering into any agreement with PBGC regarding termination of the Hourly Plans without UAW's

6

consent, there is no such agreement regarding the Salaried Plans. However, UAW continues to dispute the status of the Liquidating Trustee as the Plan Administrator and argues November 2, 2009 is the proper termination date for the Plans.

29 U.S.C. § 1348(a)(3) provides that "the termination date of a single-employer plan is...in the case of a plan terminated in accordance with the provisions of section 1342 of this title [governing the involuntary termination of a plan by PBGC], the date established by the corporation and agreed to by the plan administrator..." The Rouge Steel Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code named the Liquidating Trustee as Plan Administrator of the Plans. The Rouge Steel Plan of Liquidation was confirmed by the Bankruptcy Court over UAW's objections and, while UAW filed an appeal, UAW failed to obtain a stay of the Bankruptcy Court's Confirmation Order. Thus, pursuant to 29 U.S.C. §§ 1342(c) and 1348(a)(3), PBGC and the Plan Administrator agreed to terminate the Salaried Plans, transfer trusteeship to PBGC, and establish October 31, 2005 as the Salaried Plans termination date. The Court is not aware of any provision allowing a third party to object to the agreement reached between PBGC and the Plan Administrator and UAW has pointed to no legal authority for such a right. Thus, the agreement between PBGC and the Plan Administrator setting October 31, 2005 as the termination date for the Salaried Plans stands. As discussed below, without the Stipulation, the Court would establish October 31, 2005 as the termination date for the Salaried Plans.

<u>2) Even If The Above-Referenced Stipulation Was Not In Place For The Salaried Plans, October 31, 2005 Is The Appropriate Termination Date For The Plans.</u>

<u>A) PBGC's Termination Date Decision Is Not Entitled To APA Deference</u>

One of the issues raised by the parties is the appropriate standard of review of

PBGC's termination date decision. UAW argues that PBGC's determination is not entitled to any deference. UAW argues: (1) the language of the statute provides that the court (rather than PBGC) determines the termination date; (2) the Seventh Circuit's decision in *In re UAL Corporation (Pilots' Pension Plan Termination)*, 468 F.3d 444 (7th Cir. 2006), persuasively rejects PBGC's argument that a deferential review applies; (3) the Supreme Court's decision in *United States v. Mead Corp.*, 533 U.S. 218 (2001), suggests deference is not applicable here; and (4) due process concerns weigh against providing deference to PBGC's determination.

The plain language of the statute, 29 U.S.C. §1348(a)(4), provides the Court should determine the appropriate termination date. The section provides that when PBGC and the plan administrator do not agree on the termination date and PBGC then seeks termination by court decree, the termination date is "the date established by the court." The Seventh Circuit considered the appropriate level of deference in *In re UAL Corporation*, 468 F.3d at 449-50 (citations omitted):

> Deference is appropriate when agencies wield delegated interpretive or adjudicatory power – the former usually demonstrated by rulemaking and the latter by administrative adjudication (which also may yield rules in common-law fashion). The PBGC did not use either rulemaking or adjudication to decide that United's plan should be wrapped up at the end of 2004. Its decision was made unilaterally and was not self-executing. The only authority that the PBGC has under § 1342 is to ask a court for relief. That implies an independent judicial role...As the plaintiff, a federal agency bears the same burden of persuasion as any other litigant.

8

In *United States v. Mead Corp.*, 533 U.S. 218, 233-34 (2001), the Supreme Court denied APA deference to decisions of the U.S. Customs Service setting tariff classifications for particular imports because the decisions resulted neither from rulemaking nor from administrative adjudication. UAW also argues that reviewing PBGC's proposed termination date under the APA standard would violate the Due Process Clause by depriving Plan Participants of rights in property without the opportunity to be heard. The Court is persuaded that APA deference does not apply to PBGC's termination date determination.[2] However, as described below, some deference is provided to PBGC's choice of termination date after certain requirements are met. *See PBGC v. Republic Technologies Int'l, LLC*, 386 F.3d 659, 668 (6th Cir. 2004) ("*RTI*") (setting the standard for setting a termination date and providing some deference to PBGC's chosen termination date, but only after PBGC establishes that appropriate notice was provided to the plan participants).

### B) Regardless Of The Standard Of Review, October 31, 2005 Is The Appropriate Termination Date For The Plans Pursuant To *RTI*

As referenced above, the Sixth Circuit set forth the standard for determining the appropriate termination date for an involuntary plan termination in *RTI*. 386 F.3d at 665-67. Two factors should be considered in setting a termination date: (1) the expectations of the plan participants; and (2) the financial implications of the termination date for PBGC. *Id.* at 665. In following *PBGC v. Broadway Maintenance Corp.*, 707 F.2d 647, 649 (2d Cir. 1983), the *RTI* Court instructed: "the court should determine the earliest date when the

---

[2]During the July 29, 2010 hearing, PBGC clarified its position concerning the appropriate level of review for the termination date decision. PBGC explained its argument that the decision to terminate is governed by the APA standard of review but the termination *date* decision (at issue here) is entitled to some lesser degree of deference – "little d deference."

participants had actual or constructive notice of the plan's termination...'then select whatever later date serves the interests of PBGC.'" 386 F.3d at 666. "'PBGC's interests should be deemed to be best served by the date proposed by PBGC.'" *Id.* at 667, *quoting PBGC v. Mize Co., Inc.*, 987 F.2d 1059, 1063 (4th Cir. 1993).

The earliest date the participants had actual or constructive notice of the plan's termination is used because "expectation interests in the accrual of benefits are extinguished on the date the participants receive reasonable notice from PBGC that the plan is going to be terminated." *Id.* at 667. In *RTI*, the plan participants' reliance interests were extinguished with actual notice – when PBGC sent notice of termination. *Id.* at 661. In *PBGC v. Heppenstall Co.*, 633 F.2d 293, 301 (3d Cir. 1980), the plan participants' expectation interests were extinguished with constructive notice – the date the employer ceased all operations. All courts to address the issue have found that a cessation of operations constitutes constructive notice that the pension plan will not continue. *See Pension Comm. for Farmstead Foods Pens. Plan v. PBGC*, 991 F.2d 1415, 1421 (8th Cir. 1993); *PBGC v. Mize Co.,* 987 F.2d 1059, 1062 (4th Cir. 1993); *PBGC v. Heppenstall Co.*, 633 F.2d 293, 301 (3d Cir. 1980); *PBGC v. ACME Precision Products, Inc.*, 1995 U.S. Dist. Lexis 22525, *17 (E.D. Mich. 1995); *PBGC v. Dickens*, 535 F. Supp. 922, 925-26 (W.D. Mich. 1982); *PBGC v. Maryland Glass Corp.*, 618 F. Supp. 1410, 1415-16 (D. Md. 1985).

In this case, PBGC argues actual notice was given to Plan Participants in December 2003. Even if the actual notice is not deemed sufficient, PBGC alleges Plan Participants received constructive notice when Rouge Steel ceased operations and permanently laid off all employees in January of 2004. Thus, after January 2004 (at the latest), Plan Participants' expectation interests were extinguished. PBGC has chosen a date following

cessation of operations – October 31, 2005 – and argues that date should be deemed the date which best serves PBGC's interests. UAW makes a series of arguments designed to attack the sufficiency of the notice received by Plan Participants. However, the Court finds none of these arguments availing.

First, UAW argues that in *RTI*, unlike in this case, Plan Participants had not already received the benefits that PBGC's proposed termination date would eliminate. UAW argues that the expectation of benefits is different "from canceling a benefit already received and relied on – and not only canceling it, but demanding a full refund to be paid out of what remains. *See, e.g, United Steelworkers of America v. Weber*, 443 U.S. 193, 209 (1979) (emphasizing distinction between failure to promote and replacement of workers in affirmative action plan)." (UAW Mot., p. 13.) UAW thus argues that while "expectation interests in the accrual of benefits are extinguished on the date the participants receive reasonable notice from PBGC that the plan is going to be terminated," *RTI*, 386 F.3d at 667, the "possibly devastating economic consequences to retirees" of PBGC's proposed retroactive termination date should be considered as part of the participants' expectation interests. (UAW Mot., p. 13.) However, UAW fails to cite any cases in which courts have considered the fact that benefits were already received in evaluating expectation interests in the termination date context. As noted by the Liquidating Trustee, *RTI* does not direct a court to consider whether participants will be subject to recoupment when considering participants' expectation benefits. (L.T. Resp. to UAW Mot., p. 10.) Instead, once termination notice is provided (either actual or constructive), the plan participants' expectation interests are extinguished. *RTI*, 386 F.3d at 666-67. Moreover, the regulations contemplate recoupment of benefits already paid. *See* 29 C.F.R. §4022.81 and 29 C.F.R.

§4022.82.

Second, UAW argues the notice received by participants in 2003 was insufficient to extinguish their expectation of future continuation of the Plans. (UAW Mot., p. 14.) UAW argues the 2003 communications by PBGC were "equivocal" concerning PBGC's intentions regarding termination of the Plans because PBGC's December 18, 2003 press release contained a quote from its then-Executive Director stating that PBGC's actions were only a "protective measure." (UAW Mot., p. 15.) Given the simultaneous filing of this lawsuit in which PBGC seeks termination of the Plans and UAW's substantial involvement in this action, UAW's argument lacks merit.

Third, UAW argues the 2003 determinations and notices were nullified by the Court's January 10, 2006 Order vacating the termination date decision of PBGC and by PBGC's inaction following the Order. (UAW Mot., pp. 14-15.) UAW notes PBGC did not file its new Motion for Summary Judgment for almost four years. UAW argues PBGC's decision not to immediately return to court with a new determination caused Plan Participants to have continued expectations. UAW argues "when such long delays by a government agency prejudice a party, a court may exercise its discretion and, for example, refuse to enforce an otherwise-appropriate remedy. This is true even when the delay is caused by the complexity or novelty of the issues and procedures involved. *See, e.g., TNS, Inc. v. National Labor Relations Board*, 296 F.3d 384 (6th Cir. 2002)." *Id.* at p. 17. UAW also argues that the sale and cessation of Rouge Steel operations did not provide sufficient constructive notice because of the ongoing administration of the Plans and awareness (by participants, UAW, and PBGC) of a letter agreement between UAW and Ford in which Ford agreed to study the possible assumption of the Plans. UAW fails to cite any legal authority

12

within the plan termination context for its continued or renewed expectations arguments. Indeed, courts have rejected such arguments. *See Pension Comm. for Farmstead Foods Pension Plan*, 991 F.2d at 1421 (following cessation of operations, arbitrator's decision that actual notice was not in accordance with CBA "does not retroactively revitalize a justifiable expectation in participants of a continued accrual of benefits"); *PBGC v. United Air Lines, Inc.*, 436 F. Supp. 2d 909, 920 (N.D. Ill. 2006) (rejecting argument that association's communications to plan participants regarding its vigorous challenge of PBGC's termination decision rendered PBGC's notice ineffective); *PBGC v. Johnson & Wortley, P.C.*, No. 98-0527 (N.D. Tex. Sep. 3, 1999) (slip op.) (following cessation of operations, participants' expectation interests were extinguished and PBGC's cost-of-living increases did not create new expectations). Following cessation of Rouge Steel's operations, Plan Participants could not continue to have reasonable expectations the Plans would continue to govern. All of the participants represented by UAW were permanently laid off by Rouge Steel. Moreover, given the actual notices, the constant bankruptcy court activity, the winding down of Rouge Steel's estate, and the pendency of this action, Plan Participants were on notice that the Plans would be terminated.

During the hearing, UAW requested that the Court order that PBGC refrain from seeking recoupment of benefits already paid if the Court sets an October 31, 2005 termination date. UAW failed to provide any legal authority for the appropriateness of such judicial action.

CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is GRANTED, Intervenors' Motion for Partial Summary Judgment is DENIED, and PBGC is

APPOINTED as Trustee of the Plans.


Dated: August 23, 2010

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 23, 2010, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk